| | | |
|---|---|---|
| VIVIAN FORD a/k/a/ VIVIAN FORD SHEPPARD and EARL JOHNSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case number 4:09cv0512 TCM |
| ST. LOUIS METROPOLITAN TOWING, L.C., et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

This matter[1] is before the Court on motions filed by Defendant St. Louis Metropolitan

Towing, L.C. ("Metropolitan Towing") to dismiss Count I [Doc. 17], to dismiss the claims of

Plaintiff Earl Johnson [Doc. 19], and to dismiss Plaintiffs' claims for infliction of emotional

distress [Doc. 47], as well as a motion to dismiss filed by Defendant City of St. Louis ("City")

[Doc. 43].[2] Plaintiff Vivian Ford a/k/a Vivian Ford Sheppard (Ford) and Plaintiff Earl Johnson

(Johnson) (collectively referred to as Plaintiffs) filed opposition to these motions, and

Metropolitan Towing filed replies supporting its motions to dismiss.

In summary, this case arises out of Metropolitan Towing's towing in April 2008 and

---

[1] The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2] The parties agreed that the two motions to dismiss Metropolitan Towing filed before the filing of the first amended complaint remained pending, and were not moot, upon the filing of Plaintiffs' first amended complaint. Accordingly, the Court considers all four motions to dismiss as pending and directed to the first amended complaint.

storage until November 2008 of a vehicle owned by Plaintiff Ford and used by Plaintiff Johnson, and Metropolitan Towing's return of the vehicle to Plaintiffs in an allegedly more damaged condition and only upon Plaintiffs' payment of $6,075.

Metropolitan Towing's motions to dismiss seek relief under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.[3]

City does not explicitly state the basis of its motion to dismiss, and Plaintiffs question whether it is pursued under Rule 12(b)(6) or some other provision. In support of its motion City cites to Chapter 84 of Missouri Revised Statutes and refers this Court to a Memorandum and Order entered by the Honorable Robert H. Dierker in **Poole v. S & H Towing**, Cause No. 0822-CC07861 (Mo. Cir. Ct. 22nd Jud. Cir. Aug. 11, 2009). (City's Mot. Dismiss [Docs. 43, 44-1].) Based on this legal argument in City's motion, the Court will consider that motion as seeking dismissal of Plaintiffs' claims against City under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.[4]

---

[3] Plaintiffs urge, in part, that Metropolitan Towing's motions to dismiss the claims of Plaintiff Johnson and to dismiss Count I should be denied as untimely because, while filed on the same date that Metropolitan Towing filed its answer to the original petition, these motions to dismiss were filed after Metropolitan Towing filed its answer to that petition. Although technically erroneous under Federal Rule of Civil Procedure 12(b), the filing by Metropolitan Towing of its two motions to dismiss after the filing of its answer does not require the denial of those motions. See **Westcott v. City of Omaha**, 901 F.2d 1486, 1488 (8th Cir. 1990) (noting that "[t]echnically . . . a Rule 12(b)(6) motion cannot be filed after an answer has been submitted," but finding a defense of failure to state a claim upon which relief can be granted may be raised in a Rule 12(c) motion for judgment on the pleadings, citing Rule 12(h)(2), and noting the standard of review for motions under Rule 12(c) and Rule 12(b)(6) is the same); see also Case Management Order, filed July 30, 2009 (giving the parties until May 15, 2010, to file motions to dismiss and other dispositive motions [Doc. 39]).

[4] City also mentions in its motion to dismiss, without providing evidentiary support or argument, that it has not used the services of Metropolitan Towing since 2003, it has no knowledge

Rule 12(b)(6) Standard.  When ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief.  **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555-56 (2007).  The Court does not, however, accept as true any allegation that is a legal conclusion.  **Ashcroft v. Iqbal**, 129 S.Ct. 1937, 1949-50 (2009).  The complaint must have "'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  **Twombly**, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2) and then Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated by Twombly, supra); see also **Gregory v. Dillard's Inc.**, 565 F.3d 464, 473 (8th Cir.) (en banc), cert. denied, 130 S.Ct. 628 (2009).  While detailed factual allegations are not necessary, a complaint that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient.  **Twombly**, 550 U.S. at 555; accord **Iqbal**, 129 S.Ct. at 1949.  The complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  **Twombly**, 550 U.S. at 570; accord **Iqbal**, 129 S.Ct. at 1949; **Braden v. Wal-Mart Stores, Inc.**, 588 F.3d 585, 594 (8th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

of or records pertaining to Plaintiffs or Plaintiffs' vehicle, and it was not aware of and did not participate in actions pertaining to Plaintiffs' vehicle. (Doc. 43.) Due to the lack of support for these arguments, the Court will deny City's motion to dismiss, without further discussion, to the extent it presents those issues.  As appropriate, City may develop those matters more fully during the course of subsequent proceedings in this case.

misconduct alleged."  **Iqbal**, 129 S.Ct. at 1949.  If the claims are only conceivable, not plausible, the complaint must be dismissed.  **Twombly**, 550 U.S. at 570; <u>accord</u> **Iqbal**, 129 S.Ct. at 1950.  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." **Braden**, 588 F.3d at 594.  The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim.  <u>See</u> **Neitzke v. Williams**, 490 U.S. 319, 327 (1989).

## Background

Based on the standard applicable to Rule 12(b)(6) motions, the factual allegations common to all the claims in the first amended complaint,[5] taken as true, reveal in relevant part that Plaintiff Ford owned a 2005 Chevrolet Trail Blazer (Blazer), which was used primarily by her son, Plaintiff Earl Johnson.  (First Am. Compl. ¶¶ 7, 8, 9 [Doc. 65].)  The Blazer was insured through a policy issued by Government Employees Insurance Company (GEICO).  (<u>Id.</u> ¶ 10.)

On or about April 4, 2008, someone took the Blazer from Plaintiff Johnson, without his knowledge or permission.  (<u>Id.</u> ¶ 11.)  On that date, the vehicle was seen speeding and then

---

[5] Paragraphs 1 through 24 of Count I are incorporated into each count of the first amended complaint.  (First Am. Compl. [Doc. 65].)  All Counts of the first amended complaint also have a paragraph numbered 25, although the terms of those paragraphs are not the same in each Count, and some of the Counts have other paragraphs with identical numbers but different terms.  To make it clear to which paragraph the Court refers, any references to a paragraph number beyond paragraph 24 will include a reference to the relevant Count containing the referenced paragraph.

hitting a fence, a parked vehicle, and a garage of a residence before the driver and a passenger left the vehicle and ran away.  (Id.)  According to a police report, damage to the Blazer at that time was evident in the front grill, the right front headlight and fender, and the left front headlight and fender; the report did not indicate damage to other areas of the vehicle, including the undercarriage and windshield, at the time of the accident.  (Id. ¶ 12.)

At some point, Plaintiff Johnson reported the Blazer stolen.  (Id. ¶ 14.)  Police told Plaintiff Johnson that their investigation revealed that an individual known as "Duke" was the driver or passenger at the time of the accident.  (Id. ¶ 15.)

After the accident, Metropolitan Towing, a Missouri limited liability company, towed the Blazer to its lot on 10th Street in the City of St. Louis.  (Id. ¶ 13; Metropolitan Towing Answer First Am. Compl. ¶ 3 [Doc. 46].)  Within a day or two of the accident, and periodically thereafter, Plaintiffs went to Metropolitan Towing's premises unsuccessfully offering to pay the towing charge plus storage costs of $25.00 per day for one or two days to get the Blazer back.  (First Am. Compl. ¶ 16 [Doc. 65].)  During Plaintiffs' visits to Metropolitan Towing to obtain their Blazer, they were treated with disrespect and derision.  (Id.)  On about April 9, 2008, a Defendant[6] sent Plaintiffs a preprinted notice from the Missouri Department of Revenue stating the Blazer was at Metropolitan Towing's premises, that the towing charge was $200.00, that the storage costs would be $25.00 per calendar day during the first thirty days,

---

[6] The first amended complaint states the preprinted notice was "apparently [sent to Plaintiffs] by Defendant."  (First Am. Compl. ¶ 17 [Doc. 65].)  It is not clear to which Defendant Plaintiffs are referring, although this may be a reference to Metropolitan Towing, the only Defendant sued in Count I.

and that, as the owner, Plaintiff Ford had the right to retake possession of the vehicle after paying all towing and storage charges. (Id. ¶ 17.) At some point, Plaintiff Ford hired an attorney who also demanded return of the Blazer. (Id. ¶ 19.) Metropolitan Towing did not allow either Plaintiffs or GEICO to see the Blazer, and did not return the Blazer to Plaintiffs until November 21, 2008, after Plaintiffs paid $6,075.00 to Metropolitan Towing. (Id. ¶¶ 10, 16, 18, 20, 21, 22.) Metropolitan Towing had initially requested that Plaintiffs pay $12,000 to obtain release of the vehicle. (Id. ¶ 21.) At the time Metropolitan Towing returned the Blazer to Plaintiffs, the Blazer had heavy damage all over, including a broken windshield and undercarriage, and it was declared a total loss. (Id. ¶¶ 23, 24.)

By their first amended complaint, Plaintiffs seek actual damages, nominal damages, punitive damages, reasonable attorneys' fees, and costs from Metropolitan Towing based on a claim under Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010 et seq., (MPA) (Count I) and claims of conversion (Count II), negligence (Count III), and civil conspiracy (Count VI). (First Am. Compl. at 5-12, 18-19 [Doc. 65 at 4-11, 17-18].) Plaintiffs also seek the same monetary relief from the other four Defendants, City, Board of Police Commissioners ("Board"), Detective Enoch Chambers (Detective Chambers), and Detective Michael Strong (Detective Strong), based on a civil conspiracy claim (Count IV) and on alleged violations of 42 U.S.C. § 1983 (Count V). (Id. at 12-18.) Finally, Plaintiffs seek actual and punitive or exemplary damages, reasonable attorneys' fees, and costs from all five Defendants based on a claim of money had and received (Count VII). (Id. at 19-20.) The action was originally filed in state court and was removed to this Court based on federal question jurisdiction. (See Doc

1.)  All Defendants have filed answers to the first amended complaint, denying liability and setting forth affirmative defenses.  (Docs. 42, 46, 55.)  Only Defendants Metropolitan Towing and City have motions to dismiss pending.

**Discussion**

Plaintiff Johnson's Claims.  In one of its three motions to dismiss, Metropolitan Towing seeks dismissal of Plaintiff Johnson's MPA claim in Count I, conversion claim in Count II, negligence claim in Count III, and conspiracy claim in Count VI[7] due to this plaintiff's lack of standing.  Specifically, Metropolitan Towing argues Johnson lacks standing to pursue those claims because the claims are associated with ownership of the Blazer and there are no allegations that he has ever had an ownership interest in that vehicle.[8]  Plaintiffs counter that, in addition to Plaintiff Ford's title ownership of the Blazer, Plaintiff Johnson also owns the Blazer through his regular possession and use of the Blazer,[9] citing **Powell v. Home Indem.**

---

[7]  This motion does not challenge Plaintiff Johnson's money had and received claim in Count VII of the first amended complaint.  Nor does this motion challenge the claims Plaintiff Johnson pursues against Defendants other than Metropolitan Towing.

[8]  For this motion, Metropolitan Towing relies, in large part on **Renaissance Leasing, LLC v. Vermeer Mfg.**, No. WD 68929, 2009 WL 1181498 (Mo. Ct. App. May 5, 2009).  On November 17, 2009, however, that case was transferred to the Missouri Supreme Court, and the Missouri Supreme Court has not yet issued a decision.  See pages 3 and 5 of the Docket Sheet for **Renaissance Leasing, LLC v. Vermeer Mfg.**, No. SC90258, at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Feb. 17, 2010).  Therefore, this Court will not discuss the opinion of the Missouri Court of Appeals in that case.

[9]  In their first amended complaint, Plaintiffs allege in relevant part that "Plaintiff Earl Johnson regularly and often used the 2005 Trail Blazer; only he, and not his mother[, Plaintiff Ford], used the Trail Blazer at relevant times, and it was his primary means of transportation."  (First Am. Compl. ¶ 9 [Doc. 65].)

**Co.**, 343 F.2d 856, 859-60 (8th Cir. 1965) and **United States Fid. & Guar. Co. v. Safeco Ins. Co.**, 522 S.W.2d 809, 817-18 (Mo. 1975) (en banc).

Standing "requires a showing of 'injury in fact' to the plaintiff that is 'fairly traceable to the challenged action of the defendant,' and 'likely [to] be redressed by a favorable decision.'" **Braden**, 588 F.3d at 591 (alteration in original) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "'Injury in fact' is an invasion of a legally cognizable right. Whether a plaintiff has shown such an injury 'often turns on the nature and source of the claim asserted.'" **Id.** (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)). For standing purposes, Article III "generally requires injury to the plaintiff's personal legal interests." **Id.** "In most cases . . . a plaintiff's standing tracks his cause of action. That is, the question whether he has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant him relief." **Id.** Importantly, however, the injury in fact requirement is not coextensive with a plaintiff's causes of action. **Id.** Having considered Plaintiffs' allegations and the pertinent causes of action, the Court will grant the motion with respect to Plaintiff Johnson's conversion and negligence claims, and will otherwise deny this motion to dismiss.

For their MPA claim in Count I, Plaintiffs allege that Metropolitan Towing, individually or with others, violated the MPA between April 2008 and November 2008 (1) by using or employing "duress or undue influence" or "an unconscionable act, practice or contract" through its refusal to return the Blazer to Plaintiffs or to allow Plaintiffs or GEICO to inspect the

vehicle "unless Plaintiffs paid thousands of dollars" or unless Plaintiffs "delivered 'Duke' to the police," (First Am. Compl. Count I ¶¶ 26(a), 26(b), 26(c) [Doc. 65]); (2) by converting the Blazer through its refusal "to give up possession to Plaintiffs upon demand" (id. ¶ 26(d)); (3) by taking advantage of "an unequal bargaining position" through its refusal to return the Blazer to Plaintiffs or its refusal to allow the Blazer to be inspected (id. ¶ 26(e)); (4) by conspiring and acting "with the St. Louis Police Department to deprive Plaintiffs of their property and their rights under the Constitution and/or laws of the United States and/or the State of Missouri," (id. ¶ 26(f)), (5) by depriving Plaintiffs of their "property and rights" under the federal and state constitutions and laws through "adherence to the established policy between [Metropolitan Towing] and [t]he St. Louis Metropolitan Police Department to deprive similarly situated individuals of their property and rights" (id. ¶ 26(g));[10] and (6) by employing "undue influence, unequal bargaining power, deception and/or t[aking] a[d]vantage of confusing circumstances to obtain" Plaintiff Ford's signature on an invoice, dated November 21, 2008, which had an "unconscionable provision printed in fine print on the back which falsely stated that she, the 'Customer,' agreed to pay all charges assessed and which . . . purported to shield or exculpate" Defendant Metropolitan Towing, the St. Louis Metropolitan Police Department, Defendant Board, Defendant City, "and other entities involved from liability for the harm done by their wrongful conspiracy and acts" and which provision Plaintiffs were not aware of (id. ¶ 26(h)).

---

[10] Plaintiffs included allegations regarding others "similarly situated" in their first amended complaint but have not yet requested certification of a class.

The MPA provides in relevant part that a plaintiff in a civil action under the MPA is "[a]ny person" who purchases merchandise primarily for personal, family, or household purposes and who suffers an ascertainable loss of money or property as a result of another person's use of a method, act, or practice declared unlawful in Missouri Revised Statutes § 407.020. Mo. Rev. Stat. § 407.025.1. The statute defines "merchandise" to include services, which encompass the towing and storage of the Blazer provided by Metropolitan Towing. See Mo. Rev. Stat. § 407.010(4). The MPA also defines "person" as

> any natural person or his legal representative, partnership, firm, for profit or not for profit corporation, whether domestic or foreign, company, foundation, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof.

Mo. Rev. Stat. § 407.010(5). Neither this statutory definition of a "person" who may pursue a civil MPA claim nor any other provision of the MPA require a plaintiff to own any item that is the object of the defendant's purchased services.

Additionally, to the extent his status as an owner of the Blazer is necessary for Plaintiff Johnson to pursue his MPA claim against Metropolitan Towing, the allegation regarding Plaintiff Johnson's possession of the Blazer, along with other allegations regarding Plaintiff Johnson's involvement in the circumstances at issue here to recover the Blazer, are sufficient to allow Plaintiff Johnson to proceed with the MPA claim, in light of the Missouri Supreme Court's broad interpretation of the word "owner" in **United States Fid. & Guar. Co.,** supra. While Metropolitan Towing is correct that **United States Fid. & Guar. Co.** and **Powell**, supra, defined the word "owner" in the context of insurance policies, those policies did not include

a definition of the word. Rather, the term "owner" was considered and defined in those cases in the context of motor vehicle ownership, which is the type of ownership at issue here. The Missouri Supreme Court stated "owner" is "a word of rather broad meaning," and then quoted the following passage from **Powell**, "[t]he trial court in construing the word 'owner' must take the meaning most favorable to the insured . . . . The plain and reasonable meaning of the word as applied to motor vehicles includes not only absolute estates but also includes estates less than absolute . . . ." **United States Fid. & Guar. Co.**, 522 S.W.2d at 817-18 (internal quotation marks omitted) (quoting Powell, 343 F.2d at 859). Continuing, the Missouri Supreme Court stated:

> See also 73 C.J.S. Property § 13(a), p. 181: "The term 'owner' is a general term having a wide variety of meanings depending on the context and the circumstances in which it is used. Broadly, an 'owner' is one who has dominion over property which is the subject of ownership." Further, id. at p. 183: "The term 'owner' may also be synonymous with 'holder' or 'possessor' . . . " And see, further, **State ex rel. Thompson-Stearns-Roger v. Schaffner**, 489 S.W.2d 207, 215 (Mo. 1973), [overruled on other grounds by **Olin Corp. v. Director of Revenue**, 945 S.W.2d 442, 444 (Mo. 1997) (en banc)] where the court was concerned with the meaning of "ownership" and "title" and said: "The term 'ownership' cannot be said to have a fixed, definite meaning . . . According to Black's New Dictionary (Rev. 4th ed.), the word [']Owner['] is not infrequently used to describe one who has dominion or control over a thing, the title to which is in another."

**United States Fid. & Guar. Co.**, 522 S.W.2d at 818; accord **Huff v. Union Elec. Co.**, 598 S.W.2d 503, 511-13 (Mo. Ct. App. 1980) (concluding that Union Electric Company was an owner of the premises for purposes of the worker's compensation law and, in part, quoting "Black's Law Dictionary, Revised 4th Ed., . . . [which] says of the word 'owner,' 'The term is

. . . a nomen generalissimum, and its meaning is to be gathered from the connection in which it is used, and from the subject-matter to which it is applied.'").  Because Missouri case law defines an owner of a motor vehicle as encompassing one who possesses or exercises control over the vehicle, Plaintiff Johnson has standing to pursue his MPA claim, to the extent that claim may be interpreted to require ownership of the Blazer under the circumstances of this case.  This conclusion is no indication, however, that Plaintiff Johnson will be successful on the merits of his MPA claim, particularly in view of the allegation regarding the notice Plaintiffs received indicating that Plaintiff Ford "as the owner . . . had the right to retake possession of the vehicle during normal business hours after paying all towing and storage charges." (First Am. Compl. § 17 [Doc. 65].)  Under the circumstances, Metropolitan Towing's motion to dismiss Plaintiff Johnson's claims will be denied to the extent it is directed to Johnson's MPA claim.

With respect to the conversion claim in Count II, Plaintiffs allege that Metropolitan Towing converted the Blazer by refusing to return it to Plaintiffs upon demand.   (First Am. Compl. Count II ¶ 25 [Doc. 65].)  A plaintiff seeking relief for conversion of an automobile must have title to the car to pursue the conversion claim.  **Jones v. Ford Motor Credit Co.**, 607 S.W.2d 179 (Mo. Ct. App. 1980).  Because the allegations make clear that Plaintiff Ford, and not Plaintiff Johnson, is the owner listed on the title to the Blazer, Johnson does not have standing to pursue the conversion claim.   Accordingly, Metropolitan Towing's motion to dismiss will be granted to the extent it is directed to Johnson's conversion claim in Count II.

For the negligence claim in Count III, Plaintiffs allege that Metropolitan Towing was

negligent in failing "to return the property to Plaintiffs upon demand," in failing "to recognize or realize that Plaintiffs were entitled to the property and return it to them on demand," and in allowing the "Blazer to become damaged while under the custody or control" of Metropolitan Towing. (First Am. Compl. Count III ¶ 25 [Doc. 65].) To pursue their negligence claim, Plaintiffs "must establish that the defendant had a duty to protect the plaintiff[s] from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff[s]." **L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr.**, 75 S.W.3d 247, 257 (Mo. 2002) (en banc) (internal quotation marks omitted) (quoting Lopez v. Three Rivers Elec. Coop., Inc., 26 S.W.3d 151, 155 (Mo. 2000) (en banc)). "Whether a duty exists is purely a question of law." **Id.** (internal quotation marks omitted) (quoting Lopez, 26 S.W.3d at 155). "A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury," for "[t]he touchstone for the creation of a duty is foreseeability." **Id.** at 257 (internal quotation marks omitted) (quoting Madden v. C & K Barbecue Carryout, Inc., 758 S.W.2d 59, 62 (Mo. 1988) (en banc)).

While it is foreseeable that a towing company under the circumstances of this case would owe a vehicle's title owner a duty of due care in the towing and storage of the vehicle, it is not foreseeable that a towing company would owe such a duty to someone who is not the title owner of the towed and stored vehicle. Because the allegations indicate that Plaintiff Johnson's ownership of the Blazer arises, if at all, out of his possession of the Blazer, and because the allegations of the negligence claim arise out of Metropolitan Towing's care and return of the Blazer while it was towed and stored, Metropolitan Towing does not owe Plaintiff

Johnson a duty and Johnson lacks standing to pursue the negligence claim. Therefore, Metropolitan Towing's motion to dismiss Plaintiff Johnson's negligence claim will be granted.

The parties dispute whether the civil conspiracy claim against Metropolitan Towing in Count VI is a state claim or a federal claim under § 1983. Because the allegations in that count expressly incorporate paragraphs 1 through 40 of Count V, which is the § 1983 claim against the other four Defendants, the Court finds Count VI sets forth a conspiracy claim under § 1983, rather than a state civil conspiracy claim.

In Count VI Plaintiffs allege a conspiracy to violate Plaintiffs' Fourteenth Amendment rights by having Metropolitan Towing acquire and retain vehicles, as a result of which Metropolitan Towing would obtain money from the vehicles' owners or through disposition of the vehicles, and members of the St. Louis Police Department or others would receive the use of the vehicles and other benefits. (First Am. Compl. Count V ¶ 38 and Count VI ¶ 41 [Doc. 65].) Specifically, Plaintiffs allege they were deprived of their Blazer without due process; they were "pressed into service and required to do the work of the police by investigating, identifying, locating and apprehending a suspected criminal"; "[o]ne or both Plaintiffs were pressured into making false and potentially incriminating statements in order to regain their vehicle"; and Plaintiffs were "forced to pay exorbitant amounts in order to regain possession of their vehicle; and/or [their] vehicle was misused and misappropriated while in the possession of Defendant Metropolitan Towing and/or sustained unexplained damages which resulted in the vehicle being unsalvageable and determined to be a total loss." (Id. Count V ¶ 38.)

A private party can be liable "under § 1983 for conspiring with state officials to violate a private citizen's right[s]," so long as the private party was a willful participant in the conspiracy. **White v. McKinley**, 519 F.3d 806, 815-16 (8th Cir. 2008) (internal quotation marks omitted) (alteration in original) (quoting <u>Dossett v. First State Bank</u>, 399 F.3d 940, 950 (8th Cir. 2005)). To establish a conspiracy claim under § 1983, Plaintiffs "must show (1) that the defendant conspired with others to deprive [Plaintiffs] of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; . . . (3) that the overt act injured the plaintiff[s]," and (4) that the plaintiffs were deprived of a constitutional right or privilege. **Id.** at 814. Because the parties did not sufficiently address whether the allegations of Plaintiff Johnson's ownership of the Blazer adequately support the claimed constitutional deprivations resulting from Metropolitan Towing's towing and storage of the Blazer, the motion to dismiss this claim by Plaintiff Johnson will be denied.

Therefore, Metropolitan Towing's motion to dismiss Plaintiff Johnson's claims will be granted to dismiss Plaintiff Johnson's conversion claim in Count II and negligence claim in Count III. This motion to dismiss will otherwise be denied.

<u>MPA Claim.</u> By another motion to dismiss, Metropolitan Towing seeks dismissal of the MPA claim in Count I on the grounds there are no allegations that Metropolitan Towing engaged in any act constituting an unlawful practice under the MPA, that any such act was connected to the sale or advertisement of any merchandise in trade or commerce, that Plaintiffs sustained any ascertainable loss of money or property as a result of any unlawful act by

Metropolitan Towing, or that Plaintiffs purchased merchandise or services from Metropolitan Towing.

Missouri's MPA "paints in 'broad strokes to prevent evasion thereof due to overly meticulous definitions.'" **Raster v. Ameristar Casinos, Inc.**, 280 S.W.3d 120, 131 (Mo. Ct. App. 2009) (quoting Ullrich v. CADCO, Inc., 244 S.W.3d 772, 778 (Mo. Ct. App. 2008)). The "fundamental purpose" of the MPA is to protect consumers and, "to promote that purpose, the act prohibits false, fraudulent or deceptive merchandising practices. [Mo. Rev. Stat.] Section 407.020." **Huch v. Charter Commc'ns, Inc.**, 290 S.W.3d 721, 724 (Mo. 2009) (en banc). More specifically, that section declares that

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise[11] in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice. . . . Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

Mo. Rev. Stat. § 407.020.1 (footnote added).

The MPA provides civil liability[12] so that any person who purchases[13] or leases

---

[11]  The MPA defines "merchandise" to include goods and services. Mo. Rev. Stat. § 407.010(4) (defining "Merchandise" for purposes of the MPA as "any objects, wares, goods, commodities, intangibles, real estate or services").

[12]  The MPA also provides for criminal liability. See, e.g., **State Simmons**, 270 S.W.3d 523 (Mo. Ct. App. 2008).

[13]  Although the MPA does not define "purchase," the Missouri Court of Appeals for the Eastern District has noted in discussing an MPA claim that it "is defined in Webster's dictionary as meaning 'to obtain by paying money or its equivalent.'" **Raster v. Ameristar Casinos, Inc.**, 280

merchandise primarily for personal, family, or household purposes and

> "suffers an ascertainable loss of money or property" as the result of an unlawful practice may file a civil lawsuit to recover actual and punitive damages, [equitable relief, and] attorney's fees, from any person who engaged in a method, act or practice declared unlawful by [Mo. Rev. Stat. §] 407.020. [Mo. Rev. Stat. §] 407.025.1.[14]

**Huch**, 290 S.W.3d at 725 (footnote added).  To successfully pursue a claim under the MPA,

a plaintiff must establish four elements:

> First, there must be a use or employment of a deception, a fraud, a false pretense, a false promise, a misrepresentation, an unfair practice, or a concealment, suppression or omission of a material fact.  Second, the unlawful act must occur in connection with the sale or advertisement of any merchandise in trade or commerce.  Third, the unlawful act must result in ascertainable loss of money or real or personal property.  Fourth, the loss must occur to a person who purchases primarily for personal, family or household purposes.

**In re Geiler**, 398 B.R. 661, 671-72 (Bankr. E.D. Mo. 2008) (citing Mo. Rev. Stat. §§ 407.020,

407.025).  Although not sounding in tort or requiring "a showing of a product defect as a

matter of course, the plain language of the [MPA] demands a causal connection between the

---

S.W.3d 120, 128 (Mo. Ct. App. 2009) (citing Jackson v. Charlie's Chevrolet, Inc., 664 S.W.2d 675, 677 (Mo. Ct. App. 1984)).

[14]  Section 407.025.1 of Missouri Revised Statutes provides that

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.  The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

ascertainable loss and the unfair or deceptive merchandising practice.  See Mo. Rev. Stat. § 407.025.1."  **Owen v. General Motors Corp.**, 533 F.3d 913, 922 (8th Cir. 2008).

In its first argument for the dismissal of Count I, Metropolitan Towing characterizes Plaintiffs' MPA claim as a claim that Plaintiffs demanded the inspection and return of the Blazer, which demands Metropolitan Towing rejected.  Metropolitan Towing then argues that any such refusal, even if true, does not rise to the level of an actionable act under the MPA.

The statute does not define unfair practices that are actionable but declares unfair or deceptive practices unlawful, leaving it to a case-by-case determination whether fair dealing has been violated, based on the defendant's conduct, rather than the defendant's intent.  **Huch**, 290 S.W.3d at 724 (citing State ex rel. Webster v. Areaco Inv. Co., 756 S.W.2d 633, 635 (Mo. Ct. App. 1988)).  While recognizing the MPA does not define the term "unfair practice," the Missouri Supreme Court  has characterized the "plain and ordinary meaning of th[os]e words themselves [as] unrestricted, all-encompassing and exceedingly broad.  For better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree."  **Ports Petroleum Co., Inc. of Ohio v. Nixon**, 37 S.W.3d 237, 240 (Mo. 2001) (en banc) (discussing, in an MPA case pursued by the Missouri Attorney General, the meaning of the MPA in the context of Motor Fuel Marketing Act violations).  This broad interpretation is limited to the extent the MPA remedy is provided "only for 'unfair practices' that are connected 'with the sale or advertisement of any merchandise.' Mo. Rev. Stat. § 407.020."  **Williams v. Regency Fin. Corp.**, 309 F.3d 1045, 1050 (8th Cir. 2002).  Importantly, to establish an unlawful practice

under the MPA, the plaintiff does not need "to prove the elements of common law fraud." **Huch**, 290 S.W.3d at 724 (quoting Areaco Inv. Co., 756 S.W.2d at 635); 15 CSR 60-8.020(2). Rather, Missouri courts have interpreted the MPA as "supplement[ing] the definitions of common fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions." **Id.** (internal quotation marks omitted) (quoting State ex rel. Danforth v. Independence Dodge, Inc., 494 S.W.2d 362, 368 (Mo. Ct. App. 1973)). Regulations promulgated pursuant to the MPA broadly define an unfair practice, in relevant part, as (a) any practice which offends public policy as established by Missouri's Constitution, statutes or common law; or by the Federal Trade Commission and its interpretive decisions and which presents a risk of or causes substantial injury to consumers; as well as a practice which is unethical, oppressive, or unscrupulous and which presents a risk of, or causes, substantial injury to consumers, 15 CSR 60-8.020(1); (b) the use or employment of any duress or undue influence by any person in connection with the advertisement or sale of merchandise, 15 CSR 60-8.050; and (c) any unconscionable act or practice by any person in connection with the sale of merchandise, specifically declaring that "[i]t is unconscionable to take advantage of an unequal bargaining position and obtain a contract or term which results in a gross disparity of values exchanged," 15 CSR 60-8.080.

As noted earlier, in Count I Plaintiffs allege that Metropolitan Towing, individually or with others, violated the MPA between April 2008 and November 2008 (1) by using or employing "duress or undue influence" or "an unconscionable act, practice or contract" through its refusal to return the Blazer to Plaintiffs or to allow Plaintiffs or GEICO to inspect the

vehicle "unless Plaintiffs paid thousands of dollars" or unless Plaintiffs "delivered 'Duke' to the police," (First Am. Compl. Count I ¶¶ 26(a), 26(b), 26(c) [Doc. 65]); (2) by converting the Blazer through its refusal "to give up possession to Plaintiffs upon demand" (id. ¶ 26(d)); (3) by taking advantage of "an unequal bargaining position" through its refusal to return the Blazer to Plaintiffs or its refusal to allow the Blazer to be inspected (id. ¶ 26(e)); (4) by conspiring and acting "with the St. Louis Police Department to deprive Plaintiffs of their property and their rights under the Constitution and/or laws of the United States and/or the State of Missouri," (id. ¶ 26(f)), (5) by depriving Plaintiffs of their "property and rights" under the federal and state constitutions and laws through "adherence to the established policy between [Metropolitan Towing] and [t]he St. Louis Metropolitan Police Department to deprive similarly situated individuals of their property and rights" (id. ¶ 26(g)); and (6) by employing "undue influence, unequal bargaining power, deception and/or t[aking] a[d]vantage of confusing circumstances to obtain" Plaintiff Ford's signature on an invoice, dated November 21, 2008, which had an "unconscionable provision printed in fine print on the back which falsely stated that she, the 'Customer,' agreed to pay all charges assessed and which . . . purported to shield or exculpate" Defendant Metropolitan Towing, the St. Louis Metropolitan Police Department, Defendant Board, Defendant City, "and other entities involved from liability for the harm done by their wrongful conspiracy and acts" and which provision Plaintiffs were not aware of (id. ¶ 26(h)).

For damages, Plaintiffs allege that as a result of this conduct by Metropolitan Towing, Plaintiffs were required to pay "thousands of dollars more than the reasonable and customary

charge for towing the . . . Blazer and storing it for a few days; they were deprived of the use and value of the Blazer"; Plaintiff Johnson rented and then purchased a vehicle while waiting for the Blazer's return; recovery on the insurance policy was delayed; Plaintiffs paid GEICO monthly premiums of $145.00 for the insurance; Plaintiffs had "to pay $1,500 for legal fees in an effort to recover the vehicle"; Plaintiff Johnson "was pressed into service against his will and required to act as an unpaid agent of the Police with respect to the identification and apprehension of 'Duke'"; "Plaintiffs were pressured to make false and potentially incriminating statements to the Police, such as that they authorized 'Duke' to use the [vehicle] or participated in misuse of the vehicle"; and "Plaintiffs suffered a loss of time, effort and earnings capacity, humiliation[,] and emotional distress." (Id. ¶ 27.)

Due to the expansive interpretation given the term "unfair practices" under the MPA, Plaintiffs' allegations regarding Metropolitan Towing's unfair or deceptive delay in returning Plaintiffs' Blazer, refusal to allow Plaintiffs access to the Blazer, requirement that Plaintiffs identify or locate "Duke" to obtain return of the vehicle, and requirement that Plaintiff Ford sign an agreement containing an unconscionable release are sufficient allegations of unfair practices for purposes of the MPA.[15] Metropolitan Towing's motion to dismiss the MPA claim

_____

[15] In support of their position that they have properly alleged unfair practices, Plaintiffs cite **Lonergan v. A. J.'s Wrecker Serv. of Dallas, Inc.**, No. Civ.A.3:97CV1311D, 1999 WL 462333, at *3-4 (N. D. Tex. July 6, 1999) and **Halloran v. Spillane's Servicenter, Inc.**, 587 A.2d 176 (Conn. Super. Ct. 1990). In **Lonergan**, the court found the plaintiffs, whose cars had been towed and stored by the defendants without the plaintiffs' consent, stated a claim under the Texas Deceptive Trade Practices-Consumer Protection Act for charging the plaintiffs excessive fees for towing, storing, and related charges to obtain the release of their cars. **Lonergan**, 1999 WL 462333, at *3-4. In particular, the court concluded that the plaintiffs acquired the defendants' services by purchase and that, to ascertain whether the plaintiffs were consumers for purposes of the Act, "the court examines

due to Plaintiffs' purported failure to allege Metropolitan Towing engaged in an actionable act constituting an unfair practice under the MPA is denied.

Even if it engaged in an actionable act, Metropolitan Towing additionally argues, Plaintiffs have not alleged that Metropolitan Towing engaged in such an act in connection with the sale or advertisement of any merchandise in trade or commerce. In particular, Metropolitan Towing contends that Plaintiffs have not alleged that Metropolitan Towing offered or provided any product or service to the consuming public. Without an allegation that Metropolitan Towing committed a wrongful act in the advertisement or sale of goods or services in public trade or commerce,[16] Metropolitan Towing urges, Plaintiffs have failed to state an MPA claim

_____

[the plaintiffs'] relationship to the transaction rather than [the plaintiffs'] contractual relationship to the defendant"). **Id.** In **Halloran**, the Connecticut Superior Court concluded, after trial, that when the defendant towing company obtained vehicles without the vehicle owners' consent, the defendant engaged in unfair practices violating the Connecticut Unfair Trade Practices Act by requiring that towing, storage, and miscellaneous charges be paid as a condition precedent to release of the vehicle to its owner, by limiting the time during which the owner could obtain access to the vehicle, and by imposing storage charges after the owners demanded release of their vehicles. **Halloran**, supra. While illuminating, these cases do not address the terms of Missouri's relevant statutory and administrative provisions, as interpreted by Missouri courts.

[16] Consistent with the purpose and function of consumer protection statutes in numerous other jurisdictions, Metropolitan Towing contends in its reply brief, that Missouri limits the scope of the MPA "to unfair practices committed in the context of the public marketplace," citing **Rector v. City and County of Denver**, 122 P.3d 1010, 1017 (Colo. App. 2005) (finding parking in a metered space was not a consumer transaction and upholding the dismissal of the plaintiffs' claim, under the Colorado Consumer Protection Act, that the defendant who provided fine payment services related to the parking meters violated the Act because, in part, the third party only provided services to the city, not the plaintiffs, and nothing in the defendant's alleged misconduct in collecting fine payments would tend to attract consumers); **CA, Inc. v. Rocket Software, Inc.**, 579 F. Supp.2d 355, 365-66 (E.D.N.Y. 2008) (finding that in order to maintain an action under the Illinois Consumer Fraud and Deceptive Business Practices Act, a plaintiff must show that the competitor defendant's practices "affect consumers" and so must show that the defendant's alleged conduct "involves trade practices directed to the market generally or otherwise relates to consumer protection issues" (quoting ASI Acquisition, LLC. v. Rayman, No. 01CV0165, 2002 WL 335311, at *2 (N.D. Ill. Feb. 28, 2002)),

upon which relief can be granted.

The Court is not persuaded by Metropolitan Towing's argument that Plaintiffs' MPA claim fails because the parties' transaction was not a "public transaction." The only Missouri case to address an argument that the MPA does not apply unless a "public transaction" is involved is a criminal case, **State v. Simmons**, 270 S.W.3d 523, 532 (Mo. Ct. App. 2008), a case not discussed by the parties here. In **Simmons**, the defendant individual, who was convicted of unlawful merchandising practices in the sale of cattle to another individual, argued in relevant part that the MPA was inapplicable because the sale was a private, rather than a public, transaction. **Id.** The Missouri Court of Appeals for the Western District noted

---

and concluding a claim by the plaintiff who had developed a source code which was allegedly used by the defendant in its product failed to support a claim under that Act); **Regency Nissan, Inc. v. Taylor**, 391 S.E.2d 467, 469 (Ga. App. 1990) (finding that Georgia's Fair Business Practices Act required that the defendant have voluntarily acted within the consumer marketplace and a jury question existed whether the defendant car dealer engaged in unfair practices by selling a used truck later determined to have been stolen, when that dealer may have had notice of a discrepancy in the vehicle identification number plate); **R.J. Longo Constr. Co. v. Transit Am., Inc.**, 921 F. Supp. 1295, 1311 (D. N.J. 1996) (noting that the New Jersey Consumer Fraud Act has "[a] critical limitation [in] that the Act does not regulate sales that cannot be considered sales to consumers as that term is commonly understood"; and a rail car purchaser was not a consumer, the car design was not merchandise, and the offer to license the rail car design was to a narrow class of manufacturers rather than to the public at large); **Schauer v. Mandarin Gems of Calif., Inc.**, 23 Cal. Rptr. 3d 233, 241 (Cal. App. 4th Dist. 2005) (owner of property received as the result of another's consumer transaction with defendant did not have a claim against the defendant under the Consumers Legal Remedies Act); **Mandelkow v. Child and Family Servs. of Erie County**, 49 A.D. 3d 1316, 1318 (N.Y. A.D. 2008) (noting the General Business Law prohibiting unlawful practices in the conduct of business, trade or commerce is "directed at wrongs against the consuming public . . . [and requires a party to] demonstrate that [the defendant's challenged conduct has] a broader impact on consumers at large" and finding a claim under that Law may not be based on a private contract dispute) (citation omitted) (internal quotation marks omitted) (first alteration in original)). Because Metropolitan Towing has not argued how the language of those states' statutes, as interpreted by pertinent regulations and case law, compares to the relevant language in Missouri's MPA, as interpreted by pertinent regulations and case law in Missouri, this Court will not further address these cases.

that neither the definitions provision of the MPA, Mo. Rev. Stat. § 407.010, nor the provision of the MPA proscribing unlawful practices, Mo. Rev. Stat. § 407.020, "distinguish[es] between 'private' and 'public' transactions." **Id.** The Missouri appellate court concluded the MPA applied to the facts, in part, because the terms suggested by the defendant "d[id] not appear in the relevant statutes." **Id.**

While the MPA may not contain an explicit requirement that it apply only to a "public transaction," civil liability under Missouri's MPA may be deemed to apply only to a "public transaction" based on the statutory reference to "trade or commerce, " Mo. Rev. Stat. § 407.020.1, or the judicial recognition that the MPA is an effort "to preserve fundamental honesty, fair play and right dealings in public transactions," **Huch**, 290 S.W.3d at 724 (emphasis added) (internal quotation marks omitted) (quoting Independence Dodge, Inc., 494 S.W.2d at 368); accord **Owen v. General Motors Corp.**, 533 F.3d 913, 922 (8th Cir. 2008) (quoting Scott v. Blue Springs Ford Sales, Inc., 215 S.W.3d 145, 160 (Mo. Ct. App. 2006)); **Plubell v. Merck & Co.**, 289 S.W.3d 707, 711 (Mo. Ct. App. 2009) (quoting Schuchmann v. Air Servs. Heating & Air Conditioning, Inc., 199 S.W.3d 228, 233 (Mo. Ct. App. 2006)); **Raster**, 280 S.W.3d at 131. Even so, Metropolitan Towing's argument does not require dismissal of Plaintiffs' MPA claim, because the circumstances of this case arise out of a sufficiently "public transaction" to satisfy the MPA.

The transaction between Plaintiffs and Metropolitan Towing did not arise out of a private agreement between individuals unrelated to a business or commercial setting. There

is no allegation or inference from the allegations that Metropolitan Towing only provided towing and storage services for Plaintiffs' vehicle and did not engage in such services for other vehicles at other times. Rather, the transaction is between the individual Plaintiffs and a Missouri limited liability company whose name raises an inference that it provides towing and related services to others as part of its regular business. Moreover, there is no indication that the parties had a relationship prior to the towing and storage of the Blazer. While this case does not present an instance where the Plaintiffs considered information provided by Metropolitan Towing and then chose to use Metropolitan Towing's towing and storage services, there is no indication in the terms of the statute that an absence of choice in a plaintiff's purchase of a defendant's merchandise, here Metropolitan Towing's towing and storage services, brings the transaction beyond the coverage of the MPA.

In light of the alleged circumstances and the broad interpretation accorded the MPA, the Court finds the nature of these parties' transaction falls within the provisions of the MPA, and Metropolitan Towing's motion to dismiss Count I on this ground will be denied.

Metropolitan Towing also urges the MPA claim fails because Plaintiffs have not alleged they sustained any ascertainable loss of money or property as a result of any unlawful act by Metropolitan Towing. Specifically, Metropolitan Towing challenges Plaintiffs' allegations regarding damage to the Blazer's windshield and undercarriage, Plaintiffs' payment of more than a reasonable and customary amount for towing the Blazer and storing it a few days, the deprivation of the use and value of the vehicle, the delay in "any recovery" due Plaintiffs under the insurance policy, Plaintiffs' payment of monthly insurance premiums during the time  the

vehicle was stored, Plaintiffs' payment of fees for an attorney's services, and Plaintiffs' "loss of time, effort and earnings capacity, humiliation and emotional distress." (First Am. Compl. Count I ¶ 27 [Doc. 65].)

The MPA requires that a plaintiff suffer "an ascertainable loss of money or property." Mo. Rev. Stat. § 407.025.1. Missouri cases have found remedies for common-law fraud apply to MPA claims, including the benefit of the bargain rule. See **Plubell**, 289 S.W.3d at 715; **Schoenlein v. Routt Homes, Inc.**, 260 S.W.3d 852, 854 (Mo. Ct. App. 2008) (citing Sunset Pools of St. Louis, Inc. v. Schaefer, 869 S.W.2d 883, 886 (Mo. Ct. App. 1994)). In cases of fraud it is generally appropriate to award compensatory damages and consequential damages, in that

> the defendant is responsible for those results, injurious to plaintiff, which must be presumed to have been within his contemplation at the time of the commission of the fraud, and plaintiff may recover damages for any injury which is the direct and natural consequence of his acting on the faith of defendant's representations.

**Scott v. Blue Springs Ford Sales, Inc.**, 215 S.W.3d 145, 182 (Mo. Ct. App. 2006) (internal quotation marks omitted) (quoting Hanes v. Twin Gable Farm, Inc., 714 S.W.2d 667, 670 (Mo. Ct. App. 1986)); see also **Sunset Pools of St. Louis, Inc.**, 869 S.W.2d at 886 (damages for an MPA claim are measured at the time of the transaction).

To the extent the Blazer suffered additional damage while stored by Metropolitan Towing, the difference in value of the Blazer may be an ascertainable property loss recoverable under the MPA to the extent the Plaintiffs show the vehicle was more damaged when it was received by Plaintiffs than when it was initially received by Metropolitan Towing. The

- 26 -

allegations that a police report following the accident and before the towing indicated less damage to the Blazer than was evident when the Plaintiffs later obtained the Blazer from Metropolitan Towing and the vehicle was declared a total loss support an inference that Metropolitan Towing caused the additional damage while the vehicle was in its custody. Therefore, Plaintiffs' claim for this loss is sufficient at this stage of the proceedings.

With respect to the amount Plaintiffs paid for the Blazer's towing and storage, this is an ascertainable loss under the MPA to the extent the amount paid by Plaintiffs exceeds a reasonable amount for the towing and days of storage up until the first time Plaintiffs offered to pay the reasonable towing and storage charges. The allegations indicate that Plaintiffs received notice shortly after the towing of the Blazer stating that Plaintiff Ford could obtain the Blazer upon paying the amount of towing and storage charges then incurred. Plaintiffs further allege that they went to Metropolitan Towing, on several occasions, to pay the $200.00 in towing charges and storage charges of $25.00 per day for several days, but Metropolitan Towing refused to give them the Blazer at that time and required Plaintiffs to wait several more months before they could recover the vehicle by paying $6,075. These allegations are sufficient to provide an inference that Metropolitan Towing unreasonably failed to return the Blazer at an earlier time when Plaintiffs were ready and willing to pay the then-incurred charges for the towing and storage of the Blazer, resulting in Plaintiffs' payment of an increased amount to recover the vehicle. Therefore, Plaintiffs' MPA claim for this amount is sufficient at this stage of the proceedings.

The alleged loss due to Plaintiffs' payment of fees for an attorney's services in

recovering the Blazer may be considered an ascertainable loss of money to the extent those services were successful in obtaining the vehicle when Plaintiffs' efforts without an attorney were not successful. Plaintiffs' allegations raise at least an inference that the hiring of an attorney was necessary to regain possession of the Blazer to the extent Metropolitan Towing, along with the St. Louis Police Department, may have required Plaintiffs to produce "Duke" to obtain release of the Blazer. While the allegations are not specific about the timing and extent of the attorney's services, the Court will not dismiss those allegations at this stage of the proceedings.

Plaintiffs' claimed loss for their payment of monthly insurance premiums during the time the vehicle was stored may constitute an ascertainable loss for purposes of an MPA claim to the extent those insurance payments were necessitated by any unfair practice by Metropolitan Towing and not to the extent they would have been due regardless of any such practice. See **Clement v. St. Charles Nissan, Inc.**, 103 S.W.3d 898, 899 (Mo. Ct. App. 2003) (the plaintiff lessee of a car sued the defendant dealership under the MPA and "adequately pleaded monetary damages in that she had been compelled to continue her lease payments in order to avoid the consequences of [the defendant]'s misrepresentation to her").

Metropolitan Towing also challenges the losses allegedly based on the deprivation of the use and value of the vehicle, the delay in "any recovery" due Plaintiffs under the insurance policy, and Plaintiffs' "loss of time, effort and earnings capacity, humiliation and emotional distress." Except to the extent Plaintiff Johnson's rental and purchase of other vehicles represent loss of use of the Blazer resulting from Metropolitan Towing's unfair practices, these

types of losses are not sufficiently definite or certain to support a monetary award for an "ascertainable loss of money or property" under the MPA.  See **Amburgy v. Express Scripts, Inc.**, 4:09CV705FRB, 2009 WL 4067218, at *9-10 (E.D. Mo. Nov. 23, 2009) (MPA claim for "time expended" is insufficient); **Schoenlein**, 260 S.W.3d at 854 (reversing, in an MPA case arising out of the defendant's failure to provide a warranty, a damages award that was based on evidence of telephone calls made by the plaintiffs to the defendant and evidence of "the significant time [the plaintiffs] spent attempting to obtain the warranty from" the defendant);[17] **Walsh v. Al West Chrysler, Inc.**, 211 S.W.3d 673, 675 (Mo. Ct. App. 2007) (questioning but not deciding whether time the plaintiff buyers spent looking for another vehicle to purchase was an "ascertainable loss" under the MPA; and rejecting, as "insufficiently definite or certain to support a monetary award" under the MPA, evidence of the time a plaintiff had spent on the unsuccessful sale with the defendant).  Therefore, the motion will be granted with respect to these alleged losses, other than loss of use of the vehicle.

For its last argument supporting its motion to dismiss Count I, Metropolitan Towing argues that Plaintiffs have not stated an MPA claim in that they have not alleged they purchased any goods or services from Metropolitan Towing because the Blazer had been towed and stored before Plaintiffs first communicated with Metropolitan Towing.

---

[17] The court in **Schoenlein** also reversed the damages award to the extent it was based on evidence of the plaintiffs' attorneys fees, but it appears those fees were the fees incurred for representation of the plaintiffs in the lawsuit and not attorneys' fees incurred by the plaintiffs in their pre-litigation effort to obtain the item, the warranty, that was purchased.  **Schoenlein**, 260 F.3d at 854.

A private cause of action under the MPA is "given only to one who purchases and suffers damage.  One who attempts to purchase, but who never receives the goods or services nor pays anything of value cannot be said to have suffered damage by reason of any unlawful practice."  **Jackson v. Charlie's Chevrolet**, 664 S.W.2d 675, 677 (Mo. Ct. App. 1984) (prospective car purchaser could not pursue an MPA claim); <u>accord</u> **Ziglin v. Players MH, L.P.**, 36 S.W.3d 786, 790 (Mo. Ct. App. 2001) (per curiam) (an attempt to place a bet did not constitute a "purchase" under the MPA).  For purposes of the MPA, the term "purchase," which is not statutorily defined, means "to obtain by paying money or its equivalent."  **Raster**, 280 S.W.3d at 128-31 (internal quotation marks omitted) (quoting <u>Jackson</u>, 664 S.W.2d at 677, which quoted Webster's Third New International Dictionary, Unabridged, 1981)).  In **Raster**, the Missouri Court of Appeals for the Eastern District found a plaintiff who had placed a coin in a slot machine satisfied the "purchase" requirement for an MPA claim against the casino. **Id.** at 128-31.

Plaintiffs have sufficiently alleged a purchase of Metropolitan Towing's merchandise or services because the MPA's definition of merchandise includes services, and Metropolitan Towing provided services, in towing and storing Plaintiffs' vehicle, for which Plaintiffs paid money.  Even if the initial towing and first few days of storage is not considered, the allegations indicate that, within a few days of the towing, Plaintiffs periodically sought return of the Blazer until they had to pay $6,075 to obtain the vehicle, and the several month delay in the return of the vehicle was allegedly due to Metropolitan Towing's allegedly unfair practices, including

using duress or undue influence and engaging in unconscionable conduct to prolong the storage time and increase the amount of fees Plaintiffs had to pay.

Metropolitan Towing's motion to dismiss Count I will be granted in part to dismiss the losses allegedly based on the deprivation of the value of the vehicle, the delay in "any recovery" due Plaintiffs under the insurance policy, and Plaintiffs' "loss of time, effort and earnings capacity, humiliation and emotional distress." Metropolitan Towing's motion to dismiss Count I will otherwise be denied.

Claims for Emotional Distress. Metropolitan Towing also filed a motion to dismiss Plaintiffs' claims for infliction of emotional distress (Doc. 47). Specifically, Metropolitan Towing seeks dismissal of Plaintiffs' claims for damages for "humiliation and emotional distress" as sought in the MPA claim in Count I, the conversion claim in Count II, and the negligence claim in Count III.[18] Metropolitan Towing argues dismissal of these damages claims is proper because Plaintiffs have failed to allege that they suffer from a medically diagnosable or medically significant emotional distress, and have not stated a claim against Metropolitan Towing for the intentional or negligent infliction of emotional distress, citing **Bass v. Nooney**, 646 S.W.2d 765, 772-73 (Mo. 1983) (en banc), and **St. Anthony's Medical**

---

[18] Because the motion to dismiss focuses only on these three claims, the Court will not address whether such damages may be pursued in the other claims pending against Metropolitan Towing, as argued by Plaintiffs. (See Pls.' Mem. Oppos. Mot. Dismiss Pls.' Claims Infliction of Emotional Distress [Doc. 60].)

The prayers for relief in these three counts seek actual and compensatory damages and each of these counts contains an allegation that, as a result of Metropolitan Towing's challenged conduct, Plaintiffs "suffered . . . humiliation and emotional distress." (First Am. Compl. Count I ¶ 27, Count II ¶ 26, and Count III ¶ 26 [doc. 65].)

**Ctr. v. H. S. H.**, 974 S.W.2d 606, 611 (Mo. Ct. App. 1998)).

Damages claimed for such things as humiliation, embarrassment, injury to feeling, emotional trauma, and mental anguish may be recoverable in certain tort actions, but not others. <u>See</u> **State ex rel. BP Prods. N. Am., Inc. v. Ross**, 163 S.W.3d 922, 929 (Mo. 2005) (en banc) (such damages may be recoverable on a claim for defamation but not on a claim of injurious falsehood); **Doe v. McFarlane**, 207 S.W.3d 52, 75 (Mo. Ct. App. 2006) (noting that mental or emotional distress damages may be recovered on a misappropriation of name claim but are not recoverable on a right of publicity claim); see also **Knifong v. Caterpillar, Inc.**, 199 S.W.3d 922, 928 (Mo. Ct. App. 2006) (for a design defect products liability claim the judgment may be based on certain intangibles such as embarrassment and humiliation). Certain state statutory claims may also support the recovery of such damages. <u>See</u> **State ex rel. Dean v. Cunningham**, 182 S.W.3d 561, 563, 567 (Mo. 2006) (en banc) (actual damages recoverable under the Missouri Human Rights Act include emotional distress damages). The question is whether damages for emotional distress and humiliation are recoverable on Plaintiffs' MPA, conversion, and negligence claims; and, if so, whether Plaintiffs have failed to state a claim for such damages.

As noted in the discussion of Metropolitan Towing's motion to dismiss Count I, a recovery on an MPA claim must be based on an "ascertainable loss of money or property," which is a pecuniary loss that does not clearly encompass damages for humiliation or emotional distress. See **Amburgy**, 2009 WL 4067218, at *9-10 (E.D. Mo. Nov. 23, 2009)

(MPA claim for "time expended" is insufficient); **Schoenlein**, 260 S.W.3d at 854 (reversing, in an MPA case arising out of the defendant's failure to provide a warranty, a damages award that was based on evidence of telephone calls made by the plaintiffs to the defendant and evidence of "the significant time [the plaintiffs] spent attempting to obtain the warranty from" the defendant); **Walsh**, 211 S.W.3d at 675 (questioning but not deciding whether time the plaintiff buyers spent looking for another vehicle to purchase was an "ascertainable loss"). Therefore, to the extent it is necessary in light of the earlier resolution of Metropolitan Towing's motion to dismiss Count I, Metropolitan Towing's motion to dismiss emotional distress damages in the MPA claim, will be granted.[19]

> With respect to the conversion claim, the measure of damages
>
> is generally based on the reasonable market value of the property at the time of the conversion. Where the property is returned to the owner after the conversion the measure of damages is the difference between the value of the property at the time of the conversion and the value at the time of the return, plus the reasonable value for the loss of use of the property.

**Lacks v. R. Rowland & Co.**, 718 S.W.2d 513, 520 (Mo. Ct. App. 1986) (emphasis and citation omitted). A plaintiff pursuing a conversion claim may also recover "special damages" for the "natural, but not necessary, result of the wrongful act." **Young v. Mercantile Trust Co. Nat'l Ass'n**, 552 S.W.2d 247, 250 (Mo. Ct. App. 1977) (considering, on a conversion claim, damages

---

[19] Plaintiffs cite **Avery v. Industry Mortgage Co.**, 135 F. Supp. 2d 840 (W.D. Mich. 2001), in support of their position that the actual damages recoverable under consumer protection statutes generally include damages for humiliation and emotional distress. This case, which addresses the recovery of actual damages under the Michigan Consumer Protection Act in light of Michigan case law, does not necessitate a conclusion that such damages are recoverable under Missouri's MPA in light of its provisions and relevant Missouri case law.

for the alleged detriment to plaintiff's reputation in the economic community) (internal quotation marks omitted) (quoting Condos v. Associated Transports, Inc., 453 S.W.2d 682, 688 (Mo. Ct. App. 1970), abrogated on other grounds Fleischmann v. Mercantile Trust Co. Nat'l Ass'n, 617 S.W.2d 73, 74 (Mo. 1981) (en banc). Conceivably, humiliation and emotional distress could be a natural, but not necessary, result of a conversion so as to support an award of such damages as special damages on a conversion claim. See Greco v. Robinson, 747 S.W.2d 730, 736 (Mo. Ct. App. 1988) (considering whether the trial court properly excluded at trial evidence of emotional distress on the plaintiffs' conversion claim).[20] For claims of emotional distress damages, Missouri courts distinguish between intentional tort actions, which do not require proof of medically documented emotional distress damages, and negligence actions, which do require such proof under Bass. See State ex rel. Dean v. Cunningham, 182 S.W.3d 561, 566 n. 4 (Mo. 2006) (en banc); see also Bogan v. General Motors Corp., 500 F.3d 828, 830-32 (8th Cir. 2007). Because there are allegations that emotional distress and humiliation resulted from Metropolitan Towing's alleged conversion of the Blazer (Count II, ¶ 26 [Doc. 65]), an intentional tort, Plaintiff Ford has satisfactorily stated a claim for damages based on any emotional distress and humiliation arising out of that conversion. Metropolitan Towing's motion to dismiss the alleged damages due to emotional distress and humiliation in

---

[20] In finding the exclusion of evidence pertaining to the plaintiffs' alleged mental or emotional distress proper with respect to their conversion claim, the state appellate court noted, in part, that the plaintiffs' conversion claim contained no allegations of "either physical or emotional injuries." Greco, 747 S.W.2d at 736. Here, the conversion claim includes an allegation that Plaintiff Ford suffered emotional distress.

the conversion claim will be denied.

The motion will, however, be granted with respect to the negligence claim because Missouri requires proof of medically documented emotional distress damages pursuant to **Bass**. See **Cunningham**, 182 S.W.3d at 566 n.4, 568; see also **Bogan**, 500 F.3d at 830-32; accord **Jarrett v. Jones**, 258 S.W.3d 442, 448 (Mo. 2008) (en banc) (**Bass** requirements apply when a plaintiff who has been in a car accident seeks emotional distress damages in a personal injury action for negligent operation of an automobile). Here, Plaintiff Ford may not recover damages for emotional distress and humiliation on her negligence claim because she did not allege that she suffered any medically diagnosed condition that resulted from Metropolitan Towing's negligence. See **Amburgy**, 2009 WL 4067218, at * 7 (noting plaintiff cannot "recover damages for emotional distress [on his negligence claim resulting in no physical injury] inasmuch as he does not allege that he suffers any medically diagnosed condition that resulted from defendant's negligent act," citing Cunningham, 182 S.W.3d at 568).

City's Motion to Dismiss. In its motion to dismiss, City seeks dismissal of the claims against it on the ground that it is a municipal corporation separate from the Board and St. Louis Metropolitan Police Department ("Department") and has no authority to direct the actions of the Board, Department, or police officers. In support of its motion, City refers to Chapter 84 of the Missouri Revised Statutes and to the August 11, 2009 decision of Judge Dierker in **Poole**, supra. In that August 11, 2009, Memorandum and Order, Judge Dierker, in relevant part, concluded that City was "not liable for unconstitutional conduct by the St. Louis Police"

and dismissed City from the lawsuit, in which the plaintiff claimed her automobile was illegally towed by City police officers, impounded, and then sold. (Ex. A to City's Mem. Supp. Mot. Dismiss [Doc. 44-1].) Plaintiffs counter that case law supports a determination that City should remain as a defendant in this lawsuit,[21] **Carroll v. Sisco**, No. 4:00CV00864, 2007 WL 209924 (E.D. Mo. Jan. 23, 2007), and **Hodges v. City of St. Louis**, 217 S.W.3d 278 (Mo. 2007) (en banc).[22]

Here, City is named as a defendant only in three claims: the state civil conspiracy claim

---

[21] In support of their opposition to City's motion to dismiss, Plaintiffs also cite to cases not clearly addressing the City as a defendant in a case focusing on allegedly improper conduct of City police officers. **Auer v. Robbins**, 519 U.S. 452 (1997) (addressing a Fair Labor Standards Act claim brought by police officials against the St. Louis Board of Police Commissioners for overtime pay); **Thomas v. St. Louis Bd. of Police Comm'rs**, 447 F.3d 1082, 1083 (8th Cir. 2006) (a case brought against the City's Board of Police Commissioners and its members); **Johnson v. Board of Police Comm'rs**, No. 4:06CV605CDP, 2007 WL 1629909, at *1 (E.D. Mo. June 4, 2007) (a case brought against the State, the City's Board of Police Commissioners, and individual police officers); **Aye v. City of St. Louis**, 2006 WL 1495042, at *1 (Mo. Ct. App. May 24, 2006) (addressing only whether the defendant Board of Police Commissioners' members were entitled to Eleventh Amendment immunity).

[22] This was a wrongful death case brought against a police officer who was driving a police car without lights and sirens in the wrong direction and hit decedent. **Hodges v. City of St. Louis**, 217 S.W.3d 278 (Mo. 2007) (en banc). The City argued that the police officer was not an agent of the City for purposes of vicarious liability and, therefore, only the officer's actual employer, the Board of Police Commissioners, was responsible for his negligence. **Id.** at 280. The Missouri Supreme Court held as a matter of law that the police officer was an agent of the City based on Missouri Revised Statutes § 84.330 as interpreted by the Missouri Supreme Court in Carrington v. City of St. Louis, 1 S.W. 240, 241-42 (Mo. 1886), and State ex rel. Wander v. Kimmel, 165 S.W. 1067 (1914). **Hodges**, 217 S.W.3d at 281.

The **Hodges** case is of little assistance absent a determination that vicarious liability or respondeat superior liability is available to establish the City's liability on Plaintiffs' claims. Such liability is not a basis for relief under § 1983. **Hughes v. Stottlemyre**, 454 F.3d 791, 798 (8th Cir. 2006) (respondeat liability). The Court will await further development of the proceedings and the parties' arguments to ascertain whether such liability is a proper basis for relief under Plaintiffs' state law claims against City.

in Count IV, the direct § 1983 claim in Count V, and the state claim for money had and received in Count VII. (First Am. Compl. at 12-18, 19-20 [Doc. 65].) The Court will first address the motion to the extent it seeks dismissal of the § 1983 claim

The § 1983 claim in Count V is based on allegations Defendants Board and City "were, at all relevant times, acting under color of State law pursuant to the custom or official policy of the Police Force," and Defendants Chambers and Strong were "agents, servants and employees" of Defendants Board and City. (Id. Count V, ¶ 25.) Plaintiffs specifically allege that City required Plaintiffs to produce the Blazer's driver in order to obtain the vehicle and refused to assist Plaintiffs in recovering the Blazer. (Id. ¶¶ 28-32.) This conduct allegedly constituted or was the result of: (a) "the execution of a custom or official policy of Defendant[s] Board . . . and/or City . . . with respect to the dealings of the Police Department with . . . Metropolitan Towing"; (b) the failure of Defendants properly to train police officers regarding dealings with Metropolitan Towing; (c) the failure of Defendants properly to monitor and supervise police officers' conduct;

> (d) The widespread or pervasive custom of the St. Louis Metropolitan Police Department to conspire with Defendant Metro[politan] Towing to misuse police authority in order to wrongfully tow and/or wrongfully store vehicles for personal gain";
>
> (e) Policymakers with final authority on police department policy making an official decision (or decisions) or otherwise authorizing the practice of conspiring with Defendant . . . Metro[politan] Towing to misuse police authority in order to wrongfully tow and/or wrongfully store vehicles for personal gain;
>
> (f) Ineffective or insincere efforts to investigate or respond to complaints or other indications of improper dealings between the Police and Metro[politan] Towing, and/or

(g) The failure of Defendants to seriously and fully investigate the dealings of the St. Louis Metropolitan Police Department with Defendant Metro[politan T]owing, and to put an end to unlawful activities arising from those dealings in light of evidence of wrongdoing such as: citizen complaints, journalistic investigation, Defendants' own knowledge of unlawful activities arising from the dealings with Defendant Metro[politan] Towing and investigations of those dealings by the FBI or other authorities.

(Id. ¶ 37.)  This conduct allegedly deprived Plaintiffs of, among other things, their property, the Blazer, for approximately eight months without due process of law and without just cause, allegedly resulting in monetary losses and other damage to Plaintiffs.  (Id. ¶ 38.)

"To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." **Moyle v. Anderson**, 571 F.3d 814, 817 (8th Cir. 2009).  Local governmental entities may be liable in damages under § 1983 where the alleged constitutional violations are "due to governmental 'custom,' even if such custom 'has not received formal approval through the body's official decisionmaking channels.'" **Johnson v. Board of Police Comm'rs,** 370 F.Supp.2d 892, 901 (E.D. Mo. 2005).  Importantly, "§ 1983 does not impose respondeat superior liability."  **Hughes v. Stottlemyre**, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted) (quoting Crawford v. Davis, 109 F.3d 1281, 1284 (8th Cir. 1997)).


The Board, not the City, appoints and employs the police force in the City.  Mo. Rev. Stat. § 84.100.  While the City's police officers are statutorily declared to be officers of the state and officers of the City,  Mo. Rev. Stat. § 84.330, this dual status does not mean the City is a proper defendant in a § 1983 case challenging City police officers' conduct against an

individual.  **Crigler v. City of St. Louis, Mo.**, 767 F. Supp. 197, 199-200 (E.D. Mo. 1991); <u>see</u>

<u>also</u> **Harmon v. City of Kansas City, Mo.**, 197 F.3d 321, 327 n.6 (8th Cir. 1999).  The City

is not a proper defendant in a § 1983 lawsuit challenging City police officers' conduct because

"the City has no direct control over the activities of the Board of Police Commissioners or its

employees" and, therefore, "cannot, as a matter of law, be liable under § 1983 as an official

policy maker responsible for approving or condoning the actions of [City's] police officers."

**Crigler**, 767 F. Supp. at 199-200 (granting summary judgment in favor of the City of St.

Louis); <u>see also</u> **Harmon**, 197 F.3d at 327 n.6.

> Pursuant to Missouri law, the Board [of Police Commissioners of the City of St.
> Louis] is responsible for formulating policies and regulations for the operation
> of the [City's] Police Department.  Though the defendant City must fund the
> Police Department[, Mo. Rev. Stat. § 84.160.3 and § 84.210], the Board, an
> independent administrative agency, has control over it . . . . It is apparent from
> the applicable statutes[, Chapter 84 of Missouri Revised Statutes,] that the St.
> Louis Police Department is under the direction and control of the Board, not the
> City.

**Otten v. Schicker**, 492 F. Supp. 455, 456 and 456 n.2 (E.D.Mo. 1980), <u>aff'd</u>, 655 F.2d 142 (8th

Cir. 1981).  Moreover, the City is statutorily prohibited from "imped[ing], obstruct[ing],

hinder[ing] or interfer[ing] with the [City's] board[] of police commissioners or any officer, or

agent or servant thereof or thereunder," except in the case of an emergency, which does not

apply here, Mo. Rev. Stat. § 84.010; see also Mo. Rev. Stat. § 84.220.  Therefore, Plaintiffs' §

1983 claim against City is dismissed to the extent it is based on an alleged failure properly to

train, monitor, or supervise St. Louis police officers; on a "widespread or pervasive custom of

the St. Louis Metropolitan Police Department to conspire with" Metropolitan Towing to misuse

police authority; and on "[p]olicymakers with final authority on police department policy making an official decision (or decisions) or otherwise authorizing the practice of conspiring with" Metropolitan Towing.  (First Am. Compl. Count V, ¶¶ 37(b), 37(c), 37(d), 37(e) [Doc. 65]).

To the extent, however, that Plaintiffs base their § 1983 claim against City on an alleged policy or custom involving Board and City (id.  Count V, ¶ 37(a)), the claim against City will remain pending.  **Carroll**, 2007 WL 209924, at *3-4; **Johnson**, 370 F. Supp.2d at 901-02.

> While the City of Saint Louis has no legal authority to direct or operate the Police Board and the two are independent legal entities, the two entities may still act jointly to deprive an individual of constitutional rights pursuant to a custom. . . . The question is whether [the City and Board] acted together by custom to deprive the plaintiff of his constitutional rights.

**Carroll**, 2007 WL 209924, at *4; accord **Johnson**, 370 F. Supp.2d at 902 ("the fact that the Defendants [City of St. Louis and St. Louis Board of Police Commissioners] are separate legal entities does not prevent them from acting in concert to deprive constitutional rights pursuant to a joint policy or custom").

Plaintiffs' § 1983 claim will also remain pending against City to the extent it is based on City's allegedly "ineffective or insincere efforts to investigate or respond to complaints or other indications of improper dealings between Police and Metro[politan] Towing" and/or "[t]he failure of Defendants to seriously and fully investigate the dealings of the St. Louis Metropolitan Police Department with Defendant Metro[politan T]owing." (First Am. Compl. Count V ¶¶ 37(f), 37(g) [Doc. 65].)  These allegations are directed against the City's own alleged failure to investigate or ineffectiveness in investigating the relationship between

Metropolitan Towing and the St. Louis Police Department.

Additionally, Plaintiffs' state law claims against City will remain pending at this time. The state law conspiracy claim in Count IV is based on an alleged "conspiracy, joint venture or common course of action" among all five Defendants through which the City's Police Department would acquire and retain vehicles through Metropolitan Towing, which would either demand, receive, and keep money collected from the vehicles' owners or would receive money through disposition of the vehicles, and through which City Police Department members would receive use of the vehicles in Metropolitan Towing's possession or other benefits. (Id.Count IV, ¶ 28.) The state law claim for money had and received in Count VII is based on allegations that City and the other Defendants are obliged to return to Plaintiffs any part of the $6,075.00 paid by Plaintiffs to recover the Blazer that exceeds the reasonable and customary towing and storage charges for a few days of storage. (Id. Count VII, ¶ 25.) Neither side has clearly addressed the City's potential liability on these claims in the materials supporting or opposing City's motion to dismiss.

## Conclusion

Based on the foregoing, the motions to dismiss will be denied in part and granted in part, and the following claims remain pending:

(a) Both Plaintiffs' MPA claim against Metropolitan Towing in Count I, except this claim no longer includes a request for damages related to any deprivation of the value of the Blazer, the delay in any recovery due Plaintiffs under the insurance policy, and Plaintiffs' "loss of time, effort, and earnings capacity, humiliation and emotional distress";

(b) Plaintiff Ford's conversion claim against Metropolitan Towing in Count II;

(c) Plaintiff Ford's negligence claim against Metropolitan Towing in Count III, except that claim no longer includes a request for damages for humiliation and emotional distress;

(d) both Plaintiffs' civil conspiracy claim against all Defendants except Metropolitan Towing in Count IV;

(e) both Plaintiffs' direct § 1983 claim against all Defendants except Metropolitan Towing in Count V, except this claim as against City is only based on the allegations that there was an alleged policy or custom involving Board and City (First Am. Compl. Count V, ¶ 37(a) [Doc. 65]), that City provided allegedly "ineffective or insincere efforts to investigate or respond to complaints or other indications of improper dealings between Police and Metro[politan] Towing" (id. ¶ 37(f)), and that City allegedly failed "to seriously and fully investigate the dealings of the St. Louis Metropolitan Police Department with Defendant Metro[politan T]owing" (id. ¶ 37(g));

(f) both Plaintiffs' conspiracy § 1983 claim against Metropolitan Towing in Count VI; and

(g) both Plaintiffs' money had and received claim against all Defendants in Count VII. Accordingly,

**IT IS HEREBY ORDERED** that Metropolitan Towing's motion to dismiss the claims of Plaintiff Earl Johnson [Doc. 19] is **GRANTED** in part so as to dismiss Plaintiff Johnson's conversion claim in Count II and Plaintiff Johnson's negligence claim in Count III.

**IT IS FURTHER ORDERED** that Metropolitan Towing's motion to dismiss the claims

of Plaintiff Earl Johnson [Doc. 19] is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Metropolitan Towing's motion to dismiss Count I [Doc. 17] is **GRANTED** in part so as to dismiss the alleged losses based on the deprivation of the value of the vehicle, the delay in "any recovery" due Plaintiffs under the insurance policy, and Plaintiffs' "loss of time, effort and earnings capacity, humiliation and emotional distress."

**IT IS FURTHER ORDERED** that Metropolitan Towing's motion to dismiss Count I [Doc. 17] is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Metropolitan Towing's motion to dismiss Plaintiffs' claims for infliction of emotional distress [Doc. 47] is **GRANTED** in part to dismiss the humiliation and emotional distress allegations from the Merchandising Practices Act claim in Count I and the negligence claim in Count III.

**IT IS FURTHER ORDERED** that Metropolitan Towing's motion to dismiss Plaintiffs' claims for infliction of emotional distress [Doc. 47] is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that City's motion to dismiss [Doc. 43] is **GRANTED** with respect to Plaintiffs' § 1983 claim in Count V based on an alleged failure properly to train, monitor, or supervise St. Louis police officers, on a "widespread or pervasive custom of the St. Louis Metropolitan Police Department to conspire with" Metropolitan Towing to misuse police authority; and on "[p]olicymakers with final authority on police department policy making an official decision (or decisions) or otherwise authorizing the practice of conspiring with" Metropolitan Towing. (First Am. Compl. Count V, ¶¶ 37(b), 37(c), 37(d), 37(e) [Doc. 65]).

**IT IS FURTHER ORDERED** that City's motion to dismiss [Doc. 43] is otherwise

**DENIED.**



                                /s/ Thomas C. Mummert, III
                                THOMAS C. MUMMERT, III
                                UNITED STATES MAGISTRATE JUDGE


Dated this 18th day of February, 2010.